IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| CAMERON JOHNSON, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-00407 |
| | ) | |
| A. SCOTT FLEMING, in his official | ) | |
| capacity as the Director of the State Council | ) | |
| of Higher Education for Virginia, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF THE MOTION TO DISMISS**

Supporting their Rule 12(b)(6) Motion to Dismiss the Verified Complaint ("Complaint") of Plaintiffs Cameron Johnson, Luke Thomas, and Trace Stevens, this Brief is respectfully submitted on behalf of Defendants Director A. Scott Fleming and Chair John Jumper of the State Council of Higher Education for Virginia ("SCHEV") and Adjutant General James W. Ring and Chief Financial Officer Donald L. Unmussig of the Virginia Department of Military Affairs ("DMA").

**INTRODUCTION**

"No State has more jealously guarded and preserved the questions of religious belief and religious worship as questions between each individual man and his Maker than Virginia." *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 528 (2023) (quoting *Jones v. Commonwealth*, 185 Va. 335, 343 (1946)). The Plaintiffs incorrectly assert that Virginia engages in "state-wide religious discrimination against college students who choose certain religious majors." Compl. ¶ 1. Their case fails under *Locke v. Davey*, 540 U.S. 712 (2004). In *Davey*, the U.S. Supreme Court held that a State does not violate the U.S. Constitution when it declines to provide tuition assistance for

education in a religious vocation. This Court recently followed *Davey* in dismissing a similar challenge, Mem. Order (May 9, 2025), ECF No. 15, *in Hall v. Fleming*, No. 3:25-cv-00186 (E.D. Va.), *on appeal*, No. 25-1574 (4th Cir.), only nineteen days before the present Plaintiffs filed their Complaint.

In *Hall*, this Court granted Director Fleming's Rule 12(b)(6) motion to dismiss Bethany Hall's challenge to Virginia's prohibition on publicly-funded tuition assistance for her religious vocational education at Liberty University. Hall challenged the prohibition under the Free Exercise Clause of the U.S. Constitution's First Amendment. She acknowledged that *Davey* "is still good law, and it is binding on this Court" but seeks to have it "explicitly overruled" in view of "subsequent Free Exercise decisions" in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017), *Espinoza v. Montana Department of Revenue*, 591 U.S. 464 (2020), and *Carson v. Makin*, 596 U.S. 767 (2022). Mem. Order 5, 7-8, *in Hall*, *supra*. This Court held that Hall's "situation stands directly analogous to Davey's" and that *Trinity Lutheran*, *Espinoza*, and *Carson* "reaffirm [*Davey*'s] holding and support its application to" Hall's case. *Id.* at 6-9. Accordingly, Hall failed to state a claim upon which relief could be granted.

The present Plaintiffs are also pursuing religious vocational degrees at Liberty and fail to state a claim upon which relief can be granted. They similarly base Count I of their Complaint— under the Free Exercise Clause—on *Trinity Lutheran*, *Espinoza*, and *Carson*. But, unlike Hall, they omit mention of *Davey* and do not acknowledge that it requires the Count's dismissal. Their Count II—based on the Free Exercise and Establishment Clauses in combination—similarly fails under *Davey*. And *Davey* also forecloses their Count III under the Equal Protection Clause of the U.S. Constitution's Fourteenth Amendment. The Court should dismiss the Complaint in its entirety.

## LEGAL BACKGROUND

**I.    VIRGINIA'S CONSTITUTIONAL PROHIBITION AGAINST STATE FUNDING FOR RELIGIOUS VOCATIONAL EDUCATION.**

The prohibition against public funding for religious vocations is a fundamental principle of religious liberty in Virginia. It arose against the backdrop of Virginia's experience with the established Church of England and taxpayer support for the salaries of its ministers, which was compelled regardless of the taxpayer's religious affiliation or belief, Hon. Stephen R. McCullough, VIRGINIA CONSTITUTIONAL LAW § 6.04 (LexisNexis 2025), as well as a 1784 attempt "to levy a general assessment for the support of teachers of religion," 1 A.E. Dick Howard, COMMENTARIES ON THE CONSTITUTION OF VIRGINIA 291-92 (1974); *Davey*, 540 U.S. at 722 n.6. Since the enactment of the Statute for Religious Freedom in 1786, Virginia law has provided that "no man shall be compelled to . . . support any religious worship, place or ministry whatsoever." Va. Code § 57-1; An Act for Establishing Religious Freedom, ch. 34 (Oct. 17, 1785), *reprinted in* 12 William Waller Hening, STATUTES AT LARGE 84, 86 (1823). This prohibition has been in the Virginia Constitution since 1830. Va. Const. art. I, § 16; Va. Const. art. III, § 11 (1830).

These concerns extend to state aid for students pursing higher education. To ensure the ongoing viability of Virginia's private colleges and universities while maintaining Virginians' religious freedom from being compelled to fund others' religious vocational education, Article VIII, § 11 was added to the Virginia Constitution in 1971 to allow "loans to students attending nonprofit institutions of higher education in the Commonwealth whose primary purpose is to provide collegiate or graduate education and not to provide religious training or theological education." 2 A.E. Dick Howard, COMMENTARIES ON THE CONSTITUTION OF VIRGINIA 957-58 (1974); REPORT OF THE COMM'N ON CONSTITUTIONAL REVISION 273 (1969). In 1975, the people

of Virginia extended this allowance to include "grants to or on behalf of" students attending such nonprofit institutions. 1974 Va. Acts, chs. 624 & 687.

Article VIII, § 11's prohibition on grants for education in "religious training or theological education" is reflected in the eligibility criteria for state grants and scholarships. *E.g.*, Va. Code §§ 23.1-610(A) (Virginia National Guard State Tuition Assistance Grant Program), 23.1-631(C) (Tuition Assistance Grant Program), 30-231.2(C) (*Brown v. Board of Education* Scholarship Program and Fund), 23.1-624(B) (Two-Year College Transfer Grant Program). The Supreme Court of Virginia has interpreted these Article VIII, § 11 phrases as follows:

- "'theological education'" as "applicable to a seminary or other institution whose purpose is to prepare students for vocations associated with ordination, such as rabbi, minister or priest;" and

- "'religious training'" as "applicable to institutions or departments within institutions whose purpose is preparation of students for religious vocations other than those associated with ordination," such as "missionary or director of religious education."

*Va. Coll. Bldg. Auth. v. Lynn*, 260 Va. 608, 624 (2000).

## II.   SCHEV'S TUITION ASSISTANCE GRANT PROGRAM.

Originally enacted in 1972 Va. Acts, ch. 18, the Tuition Assistance Grant ("TAG") Program provides grants to "Virginia students who are obligated to pay tuition as full-time undergraduate, graduate, or professional students at an" eligible "nonprofit private institution of higher education," Va. Code §§ 23.1-628(A), -631(A). SCHEV is "the administering agency for the" TAG Program and has adopted regulations to administer it. *Id.* § 23.1-629. Students can use their grant awards to pay for tuition, fees, room, board, books, supplies, and other education-related expenses. 8 Va. Admin. Code § 40-71-10 (definition of "Cost of Attendance"); *id.* § 40-71-50(B). Grant awards are subject to Article VIII, § 11's restriction against use for "religious training or

theological education," Va. Code §§ 23.1-628(A), -631(C), among other criteria for eligibility, *e.g.*, *id.* §§ 23.1-628(A), (C), -631, -632, -635.

An institution of higher education must apply to SCHEV to qualify for eligibility. 8 Va. Admin. Code § 40-71-20. The institution's application must include its certification as to certain matters including its eligibility and that it "[o]ffers academic programs that meet the definition of an eligible program and provides a list of such programs, including the officially recognized CIP codes for each program[.]" *Id.* § 40-71-20(3)(a), (b). This refers to the Classification of Instructional Programs ("CIP"), which the U.S. Department of Education's National Center for Education Statistics developed as "a taxonomic scheme that supports the accurate tracking and reporting of fields of study and program completions activity." *CIP: The Classification of Instructional Programs*, NCES.ED.GOV (last accessed June 23, 2025), *available at* https://tinyurl.com/bddmfyez. SCHEV regulations recognize that "[p]rograms that provide religious training or theological education, classified as CIP Code 39-series programs, are not eligible programs." 8 Va. Admin. Code § 40-71-10 (definition of "Eligible Program"). CIP Code 39-series programs "prepare individuals for the professional practice of religious vocations." *Detail for CIP Code 39*, NCES.ED.GOV (last accessed June 23, 2025) (titling CIP Code 39, "Theology and Religious Vocations"), *available at* https://tinyurl.com/bde7fkx7. SCHEV regulations also address the treatment of a student who declares a double major with one eligible major and one ineligible CIP Code 39 major. The student may still receive a TAG Program award as long as the number of the student's classes in the ineligible major do not exceed those in the eligible major for the semester. 8 Va. Admin. Code § 40-71-10 (definition of "Eligible Program"). SCHEV may, however, make exceptions to this double-major limitation "based on circumstances beyond the control of the student." *Id.* (same).

The Commonwealth disburses funding for the TAG Program to participating institutions, which hold the funds in trust for the benefit of the intended student beneficiaries. *Id.* § 40-71-30(A), (C). Students apply directly to their institutions for grant awards, *id.* § 40-71-40; *e.g.*, SCHEV, 2025-26 TUITION ASSISTANCE GRANT PROGRAM APPLICATION (updated Sept. 2024), *available at* https://tinyurl.com/yc6dar32, and the institutions make determinations as to students' eligibility and awards, 8 Va. Admin. Code § 40-71-60(B)(1), (2), disburse grant amounts to student accounts, *id.* § 40-71-30(C), and certify to SCHEV "that recipients are enrolled as full-time students and are meeting other eligibility requirements established for the program," *id.* § 40-71-30(A). Funds "for recipients reported as not enrolled full time or not meeting other eligibility requirements" must be returned to SCHEV. *Id.* § 40-71-30(A).

III. **DMA'S STATE TUITION ASSISTANCE GRANT PROGRAM.**

A separate State Tuition Assistance Grant ("STAG") Program exists for members of the Virginia National Guard who are "enrolled in any course or program at any public institution of higher education or accredited nonprofit private institution of higher education whose primary purpose is to provide collegiate or graduate education" and satisfy other eligibility criteria. Va. Code § 23.1-610(A). The General Assembly originally enacted the STAG Program in 1996 Va. Acts, chs. 931 & 981, the DMA administers it, Va. Code § 23.1-610, and the Adjutant General has issued a command policy to "implement[]" it and provide "procedural guidance," COMMAND POLICY 22-023 VIRGINIA NATIONAL GUARD STATE TUITION ASSISTANCE PROGRAM ¶ 2 (Sept. 15, 2022) [hereafter COMMAND POLICY], *available at* https://tinyurl.com/mu4chyyu. Among other eligibility criteria, the STAG Program incorporates Article VIII, § 11's restriction that grants not be for the primary purpose of "provid[ing] religious training or theological education." Va. Code § 23.1-610(A); *see also* COMMAND POLICY ¶ 7(a)(6)(c) ("In accordance with the Constitution of

Page 6 of 20

Virginia, Article I., Section 16, theological degrees are ineligible for STAG award (e.g., seminary school).").

Servicemembers submit their applications to the DMA, which makes eligibility and award determinations. Va. Code § 23.1-610(B); COMMAND POLICY ¶ 9(a)(1), (c); *State Tuition Assistance Program*, VA. NAT'L GUARD (last accessed June 23, 2025), *available at* https://tinyurl.com/4n2jh833. As part of this application process, the servicemember must sign a promissory note and agreement stating that he "understand[s] and agree[s] to" terms including that the STAG Program "CANNOT BE USED TO FUND DEGREES IN RELIGIOUS TRAINING OR THEOLOGICAL EDUCATION. If it is determined that any funds are used for this, it will be considered a DEFAULT and appropriate remedial action will be applied." *E.g.*, REIMBURSEMENT REQUEST REGISTRATION PACKAGE: VA. NAT'L GUARD STATE TUITION ASSISTANCE 8 (Oct. 25, 2024), ECF No. 1-8.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiffs Johnson and Thomas will begin their studies at Liberty University in the fall of 2025, Compl. ¶¶ 114, 143, and Plaintiff Stevens is already a student at Liberty University as well as a Private First Class in the Virginia Army National Guard, *id.* ¶¶ 180, 206, 253-55. The gist of their complaint is—for Johnson and Thomas—their ineligibility for a grant award through SCHEV's TAG Program and—for Stevens—his ineligibility for a grant award through the DMA's STAG Program.

I.    DENIAL OF A TAG PROGRAM GRANT FOR JOHNSON'S PASTORAL LEADERSHIP MAJOR.

Johnson will major in Pastoral Leadership at Liberty. *Id.* ¶ 115. He chose this major "because he believes God called him to pursue it and because it will develop his leadership skills,

---

[1] The factual background is stated in accordance with the applicable Legal Standard, *infra*.

gives him a foundation if he decides to further his education in graduate school, and can help prepare him if he does decide to one day go into vocational ministry." *Id.* ¶ 116. The Pastoral Leadership major is classified as a program that provides religious training or theological education, consistent with CIP Code 39, and is ineligible for a grant through the TAG Program. *Id.* ¶ 125. Liberty, accordingly, denied Johnson a grant in response to his January 2025 application. *Id.* ¶¶ 124-128; Liberty Email to Johnson (Mar. 5, 2025), ECF No. 1-4. While he continues to major in Pastoral Leadership, Johnson will continue to be denied a grant through the TAG program. Compl. ¶¶ 233-41.

## II. DENIAL OF A TAG PROGRAM GRANT FOR THOMAS'S MUSIC AND WORSHIP MAJOR.

Thomas will major in Music and Worship at Liberty. *Id.* ¶¶ 144, 153. He chose this major because it will allow him to follow his passions to "further his musical education and prepare him if he eventually [goes] into ministry," *id.* ¶¶ 142, 144, "perhaps as a worship pastor or director," *id.* ¶ 141. The Music and Worship major is classified as a program that provides religious training or theological education, consistent with CIP Code 39, and is ineligible for a grant through the TAG Program. *Id.* ¶ 150. Liberty has confirmed this to Thomas, *id.* ¶ 151, and he expects to be denied a grant through the TAG Program while he majors in Music and Worship, *id.* ¶¶ 153-54, 244-48.

## III. DENIAL OF A STAG PROGRAM GRANT FOR STEVENS'S PURSUIT OF A BACHELOR OF SCIENCE IN RELIGION (GENERAL TRACK) AND MASTER OF DIVINITY.

Stevens is a member of the Virginia Army National Guard, *id.* ¶¶ 198, 251, is pursuing a Bachelor of Science in Religion (General Track) at Liberty, *id.* ¶ 206, and expects to graduate with this degree at the end of the summer 2025 semester, *id.* ¶¶ 253-55. Stevens chose his major "because he believes God called him to pursue it and because it will help prepare him if he decided to go into ministry in the future, and it also gives him the qualifications to become an officer in the

Army." *Id.* ¶ 207. He "is interested in one day working in ministry and his primary plan is to become a chaplain in the military." *Id.* ¶ 208. The Religion (General Track) major is not classified as a CIP Code 39 program but as a CIP Code 38 program. *Id.* ¶ 223; *Search Degree Inventory*, RESEARCH.SCHEV.EDU (printout as last accessed May 22, 2025), ECF No 1-3. CIP Code 38 classifies its programs as "Philosophy and Religious Studies," and they "focus on logical inquiry, philosophical analysis, and the academic study of organized systems of belief and religious practices." *Detail for CIP Code 38*, NCES.ED.GOV (last accessed June 23, 2025), *available at* https://tinyurl.com/shhp8scm.

The DMA denied Stevens's application for a STAG Program grant for the spring 2025 semester.[2] Compl. ¶ 256. In anticipation of applying, Stevens asked the DMA if his Religion (General Track) major was eligible and referenced SCHEV's treatment of the major as eligible under the TAG Program. Stevens Email to Gregg et al. (Jan. 6, 2025), ECF No. 1-9. The DMA responded that it was not and clarified that SCHEV's treatment of the major, under SCHEV's statute and regulations, was inapposite to DMA's fulfillment of its own legal obligations under Virginia Code § 23.1-610. Unmussig Email to Stevens (Feb. 10, 2025), ECF No. 1-9; Gregg Email to Stevens (Jan. 7, 2025), ECF No. 1-9. Stevens still "believe[d he] should be eligible to receive a grant award," so he submitted an application. Stevens Letter to DMA (Apr. 9, 2025), ECF No. 20-1. But "[c]onsidering what [he] ha[d] been told by" the DMA, Stevens "struck the

---

[2] This paragraph references communications between Stevens and the DMA that are attached to this Brief and appropriately considered on Rule 12(b)(6) review. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) ("[T]here are exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.").

provision that require[d him] to agree that the grant 'cannot be used to fund degrees in religious training or theological education,'" *id.*:

Courses Covered: The Virginia National Guard State Tuition Assistance Program CANNOT BE USED TO FUND DEGREES IN RELIGIOUS TRAINING OR THEOLOGICAL EDUCATION. If it is determined that any funds are used for this, it will be considered a DEFAULT and appropriate remedial action will be applied.

Trace Michael Stevens, PROMISSORY NOTE & AGREEMENT (Apr. 9, 2025), ECF No. 20-2. The DMA denied Stevens's application, reiterating that "this grant cannot be used to provide religious training or theological education." Gregg Email to Stevens et al. (Apr. 21, 2025), ECF No. 20-3. In subsequent communications with the DMA, Stevens confirmed that his Religion (General Track) major is the one described on Liberty's website, Stevens Email to Woodlief (May 3, 2025), ECF No. 20-4, which states that the program provides "ministry training" and "falls under the John W. Rawlings School of Divinity[,]" *Bachelor of Science in Religion – General*, LIBERTY.EDU (archived May 14, 2025), *available at* https://tinyurl.com/3btbkw8m.

Stevens makes a bald assertion that the DMA "arbitrarily" determined that his major is in a program providing religious training or theological education, Compl. ¶ 15, but he has not contested—in this or any other proceeding—the DMA's determination under Article VIII, § 11 of the Virginia Constitution or Virginia Code § 23.1-610(A).[3] He expects that the DMA will deny his application for a STAG Program grant for the summer 2025 semester as it did for the spring 2025 semester. *Id.* ¶ 256; *see also id.* ¶¶ 258-63.

---

[3] If Stevens were asserting that the DMA incorrectly applied Virginia law, the Court would "lack[] jurisdiction" to adjudicate such a claim, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 124-25 (1984) (holding that Eleventh Amendment immunity precludes federal courts from "enjoin[ing] . . . state institutions and state officials on the basis of . . . state law"), and *Pullman* abstention would also be implicated by Stevens's presentation of a "question of state law that is potentially dispositive inasmuch as its resolution may moot the federal constitutional issue," *W. Va. Citizens Def. League, Inc. v. City of Martinsburg*, 483 F. App'x 838, 839-40 (4th Cir. 2012) (quoting *Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1644 (2011) (Kennedy, J., concurring)).

Stevens is also applying for admission to Liberty's Master of Divinity program and will enroll for the fall 2025 semester if accepted. *Id.* ¶ 268. This program is ineligible for a STAG Program grant, *id.* ¶ 269, and he expects to be denied the grant "for future semesters while in graduate school," *id.* ¶ 270.

## IV.    THE PLAINTIFFS' THEORIES OF RELIEF.

The Plaintiffs filed their Complaint on May 28, 2025, seeking declaratory and injunctive relief to the effect that:

- the SCHEV Defendants, Fleming and Jumper, violate the U.S. Constitution's Free Exercise, Establishment, and Equal Protection Clauses in denying TAG Program grants, "as applied" to Johnson and Thomas, "and facially," Prayer for Relief ¶¶ (A) & (C), *in* Compl. p. 38; and

- the DMA Defendants, Ringer and Unmussig, violate the U.S. Constitution's Free Exercise, Establishment, and Equal Protection Clauses in denying STAG Program grants, "as applied" to Stevens, "and facially," Prayer for Relief ¶¶ (B) & (D), *in* Compl. p. 38.

They also seek nominal damages, costs, and attorneys' fees. Prayer for Relief ¶¶ (E) & (F), *in* Compl. p. 38.

The Plaintiffs assert three Counts. Count I asserts violations of the Free Exercise Clause under theories that the Defendants' denials of the grants constitute religious discrimination, exclude the Plaintiffs from otherwise-available public benefits, and reflect religious targeting that is neither neutral nor generally applicable. *Id.* ¶¶ 294-328. Count II asserts violations of the Free Exercise and Establishment Clauses, in combination, on the theory that the Defendants' denials of the grants amount to religious favoritism and entanglement. *Id.* ¶¶ 329-42. Count III asserts that the grant denials violate the Equal Protection Clause in "treat[ing] classes of students differently based on the nature of their chosen programs." *Id.* ¶¶ 343-56.

## LEGAL STANDARD

On a defendant's Rule 12(b)(6) motion, a court will dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state "a claim for relief," the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In determining whether a complaint makes such a showing, a court assumes that the plaintiff's factual allegations, and reasonable inferences from them, are true. *Balogh v. Virginia*, 120 F.4th 127, 134 (4th Cir. 2024). This requires well-pleaded allegations of facts—"[l]abels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice . . . ." *Nanendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019)). Moreover, a court will "not accept" as true the complaint's "legal conclusions couched as facts" or its "unwarranted inferences, unreasonable conclusions, or arguments." *Balogh*, 120 F.4th at 134 (quoting *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019)). And a plaintiff cannot "plead around" a "controlling precedent." *Witt v. S.C. Nat'l Bank*, 613 F. Supp. 140, 141 (D.S.C. 1985); *A.S. v. Elyria City Sch.*, No. 1:23-cv-01763, 2024 U.S. Dist. LEXIS 139829, at *12 (N.D. Ohio Aug. 7, 2024). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate[.]" *Neitzke v. Williams*, 490 U.S. 319, 328 (1989), *superseded by statute on other grounds*.

## ARGUMENT

Each of the Plaintiffs' three Counts is foreclosed by the U.S. Supreme Court's binding decision in *Davey*. The Court should dismiss the Complaint in its entirety.

I.    **THE PLAINTIFFS' COUNT I FAILS TO STATE A CLAIM UNDER THE FREE EXERCISE CLAUSE.**

The Plaintiffs do not state a viable claim under the Free Exercise Clause.

In *Davey*, the U.S. Supreme Court held that Washington State did not violate the Free Exercise Clause in declining to award a state-funded scholarship for a student's religious vocational education. 540 U.S. 712. Washington's Constitution prohibited "public money or property" from "be[ing] appropriated for or applied to any religious worship, exercise or instruction, or the support of any religious establishment[,]" Wash. Const. art. I, § 11, and the scholarship program's governing statute "codifie[d]" this "prohibition on providing funds to students to pursue degrees that are 'devotional in nature or designed to induce religious faith,'" *Davey*, 540 U.S. at 716 (citation omitted). Davey, the plaintiff, was awarded a scholarship under the program but, after enrolling in college, learned that his "devotional theology degree" made him ineligible. *Davey*, 540 U.S. at 717. He was pursuing a double major in pastoral ministries and business management/administration, having hoped to receive "college training for a lifetime of ministry, specifically as a church pastor." *Id.* (citation omitted). Davey refused to certify that he was not pursuing a degree in devotional theology, so he was denied scholarship funding. *Id.* He sued State officials under various theories—principally, that the denial violated the Free Exercise Clause. *Id.* at 718.

The Court held that "[t]he State's interest in not funding the pursuit of devotional degrees is substantial and the exclusion of such funding places a relatively minor burden" on scholarship applicants. *Id.* at 725. "Without a presumption of unconstitutionality," Davey's claim failed. *Id.* Washington "ha[d] merely chosen not to fund a distinct category of instruction" and "d[id] not require students to choose between their religious beliefs and receiving a government benefit." *Id.* at 720-21. Scholarships could still be used at "pervasively religious schools," and students awarded

scholarships could still "take devotional theology courses." *Id.* at 724-25. Nothing in the Washington Constitution or the scholarship program "evinc[ed] . . . hostility" or "suggest[ed] animus" toward religion. *Id.*

The Court recognized the States' "historic and substantial" antiestablishment interests against funding "training for religious professions." *Id.* at 721-22, 725. Early State constitutions "prohibited *any* tax dollars from supporting the clergy," *id.* at 723, and the Court specifically referenced Virginia's experience in the 1780s leading to its prohibition against compulsory support for ministries, *id.* at 722 n.6. The Court "c[ould] think of few areas in which a State's antiestablishment interests come more into play" and held that "training for religious professions and training for secular professions are not fungible" for purposes of constitutional comparison. *Id.* at 721-22. "Indeed, majoring in devotional theology is akin to a religious calling as well as an academic pursuit." *Id.* at 721. A State does not violate the Free Exercise Clause in declining to devote public funding to it.

The situation of each of the three Plaintiffs here is "directly analogous to Davey's" and "compels this Court's dismissal of" their Complaint. Mem. Order 6, *in Hall*, *supra*. Like Davey, the Plaintiffs are pursuing degrees in religious vocational programs. *Davey*, 540 U.S. at 717; Compl. ¶¶ 115, 144, 153, 268; Stevens, PROMISSORY NOTE & AGREEMENT, *supra*, ECF No. 20-2. As a result of these choices, the Plaintiffs, like Davey, became ineligible for grants under the respective State programs in which they are interested. *Davey*, 540 U.S. at 717; Compl. ¶¶ 124-128, 153-55, 256, 269; Liberty Email to Johnson, *supra*, ECF No. 1-4; Gregg Email to Stevens, *supra*, ECF No. 20-3. And the Plaintiffs and Davey brought suits contending that laws barring state tuition assistance for students pursuing majors in religious vocations violate the Free Exercise Clause. *Davey*, 540 U.S. at 718; Compl. ¶¶ 294-328. Further, the state laws at issue in both cases

allow tuition assistance for students attending religious *universities* or taking religious *courses*, as long the funding does not go toward religious *majors* or *degrees*. *Davey*, 540 U.S. at 724 & n.8; *Lynn*, 260 Va. at 624; Va. Const. art. VIII, § 1; Va. Code §§ 23.1-610(A), -628(A), -631(C); 8 Va. Admin. Code § 40-71-10 (definition of "Eligible Program"); COMMAND POLICY ¶ 7(a)(6)(c).

*Davey* requires Count I's dismissal. Mem. Order 9, *in Hall*, *supra*. The Plaintiffs' efforts to avoid that conclusion are unavailing. First, their reliance on *Trinity Lutheran*, *Espinoza*, and *Carson* is misplaced. *Cf.* Compl. ¶¶ 21, 298-300. None of these cases abrogated or overruled *Davey*; rather, they "reaffirm[ed its] holding and support its application to the instant case." Mem. Order 7-9, *in Hall*, *supra*. After the Court's decisions in *Trinity Lutheran*, *Espinoza*, and *Carson*, "prohibitions on state tuition assistance for religious vocational training, such as Plaintiff[s'] chosen course[s] of study at Liberty, remain permissible under the Free Exercise Clause." *Id.* at 9. Second, the Plaintiffs cannot rely on their assertions of "discriminat[ion] against religion," *e.g.*, Compl. ¶¶ 304, 307, 312, or against "students who choose religious programs that Defendants deem to be too religious," *e.g.*, *id.* ¶ 320—relative to "comparable secular activity" or to "some religious activity," *e.g.*, *id.* ¶¶ 321, 322. These are nothing more than the Plaintiffs' "arguments" and "legal conclusions couched as facts." *Balogh*, 120 F.4th at 134 (quoting *Turner*, 930 F.3d at 644). The Plaintiffs cannot "plead around," *Witt*, 613 F. Supp. at 141; *A.S.*, 2024 U.S. Dist. LEXIS 139829, at *12, *Davey*'s recognition that it is constitutional for a State to decline funding for education in a religious vocation, 540 U.S. at 721-22, or Virginia law's accordance with this recognition, *Lynn*, 260 Va. at 624; Va. Const. art. VIII, § 1; Va. Code §§ 23.1-610(A), -628(A), -631(C); 8 Va. Admin. Code § 40-71-10 (definition of "Eligible Program"); COMMAND POLICY ¶ 7(a)(6)(c).

Count I fails to state a claim upon which relief can be granted. The Court should dismiss it accordingly.

## II.    THE PLAINTIFFS' COUNT II FAILS TO STATE A CLAIM UNDER THE FREE EXERCISE AND ESTABLISHMENT CLAUSES IN COMBINATION.

The Plaintiffs' Count II, based on the Free Exercise and Establishment Clauses in combination, also fails to state a claim upon which relief can be granted. The gist of this Count appears to be the Plaintiffs' bald assertion that the "Defendants favor certain religions and religious programs over others" and any determination whether programs provide religious training or theological education "require[s them] to entangle [themselves] in religious matters." Compl. ¶¶ 332, 335, 338. *Davey* forecloses the Free Exercise half of this claim, as already set forth, Compl. ¶¶ 331, 340, *see supra* Argument pt. I, and the Plaintiffs cannot revive it by latching the Establishment Clause onto it, Compl. ¶ 330. Their Establishment Clause theory fails for at least three reasons.

First, Davey asserted an Establishment Clause claim that was rejected. He unsuccessfully argued to the Supreme Court that Washington's scholarship program required "discriminatory treatment of religious instruction" and "entanglement" in violation of the Establishment Clause. Davey's Br. *72-75, *in Locke v. Davey*, No. 20-1315 (U.S.), *available at* 2003 U.S. S. Ct. Briefs LEXIS 757.

Second, it is informative that the Fourth Circuit affirmed this Court's dismissal of an Establishment Clause challenge to the Article VIII, § 11 restriction of "financial aid to students attending church-affiliated institutions only within the Commonwealth." *Phan v. Virginia*, 806 F.2d 516, 518 (4th Cir. 1986). The plaintiff was denied state assistance to attend a Presbyterian school in North Carolina. *Id.* 517-18. He "contend[ed] that distinguishing out-of-state schools on the basis of religious affiliation . . . impermissibly disfavors church-affiliated colleges." *Id.* at 519. The

Fourth Circuit disagreed. "Because the Virginia program contemplates that some state monies will flow to sectarian schools, it is difficult to sustain an establishment clause challenge based on an asserted hostility to religion." *Id.* There was "no merit in the establishment clause contention." *Id.*

Third, Article VIII, § 11—and its incorporation in the TAG and STAG Programs—is the result of an effort to *increase* the availability of State funding to religious and nonreligious nonprofit institutions of higher education, while respecting longstanding concerns against public funding of religious training or theological education. *Id.* at 518 ("Virginia could not provide assistance to church-affiliated schools" before Article VIII, § 11's passage, which was intended "primarily to permit state assistance to financially hard-pressed private institutions of higher learning, whether church-related or not"); 2 Howard, *supra*, at 957-58, 962-63; REPORT OF THE COMM'N ON CONSTITUTIONAL REVISION, *supra*, at 273-74. Nothing in Article VIII, § 11 or the TAG and STAG Programs "evinc[es] . . . hostility" or "suggests animus" toward religion or requires unconstitutional entanglement. *Davey*, 540 U.S. at 724-25. This is not a case where the State's challenged exclusion "expressly discriminates *among* religions, allowing aid to 'sectarian' but not 'pervasively sectarian' institutions" and not a case where "it does so on the basis of criteria that entail intrusive governmental judgments regarding matters of religious belief and practice." *Cf. Colo. Christian Univ. v. Weaver*, 534 F.3d 1245, 1256 (10th Cir. 2008) (distinguishing a challenged Colorado law, on these bases, from the Washington law challenged in *Davey* (quoting *Larson v. Valente*, 456 U.S. 228, 246 (1982))), *cited in* Compl. ¶ 339.

The Plaintiffs' Count II should be dismissed. They cannot "plead around" *Davey*. *Witt*, 613 F. Supp. at 141; *A.S.*, 2024 U.S. Dist. LEXIS 139829, at *12.

**III.    THE PLAINTIFFS' COUNT III FAILS TO STATE A CLAIM UNDER THE EQUAL PROTECTION CLAUSE.**

Finally, the Plaintiffs' Count III, under the Equal Protection Clause, also fails. *Davey* forecloses this claim. In addition to his other constitutional challenges, Davey "argued the denial of his scholarship based on his decision to pursue a theology degree violated . . . the Equal Protection Clause." *Davey*, 540 U.S. at 718; Davey's Br. *75-77, *supra*. The Supreme Court "appl[ied] rational-basis scrutiny to [Davey's] equal protection claims" and held that Washington's scholarship program "pass[ed] such review" "[f]or the reasons stated" in the Court's rejection of his Free Exercise claim. *Davey*, 540 U.S. at 720 n.3. Likewise, here, there is a rational basis for Article VIII, § 11 and the TAG and STAG Programs to decline public funding for programs in religious training and theological education, consistent with the States' longstanding and legitimate antiestablishment interests. *Accord supra* Argument pt. I; *see also Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007) ("The Supreme Court has described the rational basis standard of review as 'a paradigm of judicial restraint.'" (quoting *FCC v. Beach Comm'c'ns, Inc.*, 508 U.S. 307, 314 (1993)); *74 Pinehurst LLC v. New York*, 59 F.4th 557, 569 (2d Cir. 2023) ("Rational basis review is typically easy to satisfy[.]"). Again, the Plaintiffs cannot "plead around" *Davey*. *Witt*, 613 F. Supp. at 141; *A.S.*, 2024 U.S. Dist. LEXIS 139829, at *12. Like the others, their Count III fails to state a claim upon which relief can be granted and should be dismissed.

**CONCLUSION**

Consistent with the reasons stated above, the Defendants respectfully request that this Court dismiss the Plaintiffs' Complaint.

Respectfully submitted,

A. SCOTT FLEMING, in his official capacity as the Director of the State Council of Higher Education for Virginia; JOHN JUMPER, in his official capacity as the Chair of the State Council of Higher Education for Virginia; MAJOR GENERAL JAMES W. RING, in his official capacity as the Adjutant General of Virginia; and DONALD L. UNMUSSIG, in his official capacity as the Chief Financial Officer of the Virginia Department of Military Affairs

Jason S. Miyares
 *Attorney General*

By:  /s/ Robert S. Claiborne, Jr.

Robert S. Claiborne, Jr. (VSB No. 86332)*
Christopher P. Bernhardt (VSB No. 80113)*
 *Assistant Attorneys General*

Thomas J. Sanford
 *Deputy Attorney General*

Office of the Attorney General
202 North Ninth Street

Jacqueline C. Hedblom
 *Senior Assistant Attorney General/*
 *Trial Section Chief*

Richmond, Virginia 23219
Telephone (RSC): (804) 482-2275
Telephone (CPB): (804) 371-0977
Facsimile: (804) 371-2087

Calvin C. Brown
 *Senior Assistant Attorney General/*
 *General Civil Unit Manager*

rclaibornejr@oag.state.va.us
cbernhardt@oag.state.va.us

\* *Counsel of Record for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of June, 2025, I filed the foregoing using the Court's

CM/ECF filing system, which sends an electronic notification of the same to counsel of record.

By: /s/ Robert S. Claiborne, Jr.
Robert S. Claiborne, Jr. (VSB No. 86332)*
*Assistant Attorney General*
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 482-2275
Facsimile: (804) 371-2087
rclaibornejr@oag.state.va.us

* *Counsel of Record for Defendants*