IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| CAMERON JOHNSON, *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25CV407 (RCY) |
| | ) | |
| A. SCOTT FLEMING, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This is a civil rights action brought by Plaintiffs, current and prospective Liberty University students, against the administrators of two public grant programs: the Virginia Tuition Assistance Grant ("VTAG") Program and the Virginia National Guard State Tuition Assistance Program ("STAP"). Plaintiffs bring three claims alleging violations of the Free Exercise, "Religion," and Equal Protection Clauses of the United States Constitution. The case is before the Court on Defendants' Motion to Dismiss and Plaintiffs' Motion for Preliminary Injunction. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant the Motion to Dismiss in part and deny the Motion for Preliminary Injunction.

**I. STANDARD OF REVIEW**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952. Such a standard, however, does not require the Court to accept any unreasonable inferences or a plaintiff's legal conclusions. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.* Also, where "a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate." *Neitzke v. Williams,* 490 U.S. 319, 328 (1989).

At the motion-to-dismiss stage, a court may consider the face of the complaint, documents attached to the complaint, and documents attached to the motion to dismiss that are integral to the complaint and whose authenticity is unchallenged. *Philips*, 572 F.3d at 180; *see also Phillips v.*

2

*LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).  Applying these standards, the Court construes the facts in the Complaint, including any attached documents, as follows.

## II. BACKGROUND

Plaintiffs filed their Complaint (ECF No. 1) on May 28, 2025.  Defendants jointly filed their Motion to Dismiss (ECF No. 19) and brief in support thereof (ECF No. 20) on June 23, 2025.  Plaintiffs filed their Motion for Preliminary Injunction (ECF No. 22) and memorandum in support thereof (ECF No. 23) on June 27, 2025.  Both motions have been fully briefed.  Plaintiffs subsequently filed a Notice of Supplemental Declarations in support of their Motion for Preliminary Injunction (ECF No. 30) on November 25, 2025.

### A. Plaintiffs Cameron Johnson, Luke Thomas, and the VTAG Program

The VTAG Program provides non-need-based grants to Virginia residents who attend private, non-profit colleges or universities.  Compl. ¶ 55 (citing Va. Code Ann. § 23.1-628 *et seq.*).  The State Council of Higher Education for Virginia ("State Council") administers the VTAG Program.  *Id.* ¶¶ 3, 46; Va. Code Ann. § 23.1-629.  Defendant Fleming serves as the director and chief executive officer of the State Council; Defendant Jumper serves as the State Council's Chair (together, "State Council Defendants").  Compl. ¶¶ 42, 44.

By statute, Virginia students who are obligated to pay tuition as full-time undergraduate, graduate, or professional students at an eligible institution are eligible to receive a VTAG grant.  *Id.* ¶ 56; Va. Code Ann. § 23.1-631.  Implementing regulations for the VTAG Program require that an award recipient be "a full-time student in an eligible program at a participating eligible institution."  Compl. ¶ 62; 8 Va. Admin. Code § 40-71-40(C)(2).  Both the governing statute and implementing regulation define an "eligible institution" as a private, nonprofit institution of higher education "whose primary purpose is to provide collegiate, graduate, or professional education and not to provide religious training or theological education."  Compl. ¶ 63; Va. Code Ann. §

3

23.1-628; 8 Va. Admin. Code § 40-71-10. Liberty University is an eligible institution in the VTAG Program. Compl. ¶ 65.

For purposes of VTAG awards, "[p]rograms that provide religious training or theological education . . . are not eligible programs." 8 Va. Admin. Code § 40-71-10; Compl. ¶ 67; *see also* Va. Code Ann. § 23.1-631(C). The State Council employs the Classification of Instructional Programs ("CIP") coding system[1] in its administration of the VTAG Program. Compl. ¶¶ 68, 72. By regulation, CIP Code 39 programs provide religious training or theological education and are thus not VTAG-eligible programs. Compl. ¶ 68; 8 Va. Admin. Code § 40-71-10. The State Council does not, however, exclude CIP Code 38 programs, which are programs for "Philosophy and Religious" studies. Compl. ¶ 76. A student remains VTAG-eligible if she majors in an eligible program and minors in an ineligible program. Compl. ¶ 87. A student can also double major in an eligible program and an ineligible program and still receive a full VTAG award for the term, so long as that student takes an equal or greater number of courses for the eligible major than the number of courses for the ineligible major. Compl. ¶ 84; 8 Va. Admin. Code § 40-71-10. The State Council may make exceptions to the double-major rule "based on circumstances beyond the control of the student." Compl. ¶ 86; 8 Va. Admin. Code § 40-71-10.

Plaintiff Cameron Johnson is a Christian with sincere religious beliefs rooted in the Holy Bible as the Word of God. Compl. ¶¶ 97–98. At age 15, Mr. Johnson believed that God was leading him to "go into ministry." *Id.* ¶ 109. However, he "does not yet know whether this calling to ministry is a vocational calling, or a calling to minister to others in a secular career or workplace." *Id.* ¶ 110. Mr. Johnson decided to major in Pastoral Leadership at Liberty University, which is classified as a CIP Code 39 program and thus ineligible for a VTAG award. *Id.* ¶¶ 114–

---

[1] The CIP coding system was developed by the National Center for Education Statistics—an agency within the federal Department of Education—for the purpose of tracking and reporting on fields of study. Compl. 8 n. 2.

15, 125. The State Council considers Liberty University's Pastoral Leadership major a program for religious training or theological education, and so Plaintiff Johnson's VTAG Program application was accordingly denied. *Id.* ¶¶ 124–28.

Plaintiff Luke Thomas is also a Christian with sincere religious beliefs rooted in the Holy Bible as the Word of God. Compl. ¶¶ 133–34. Around the time when he was a junior in high school, Mr. Thomas "believed that God wanted him to use his talents, at some point in his future, in the ministry field, perhaps as a worship pastor or director." *Id.* ¶¶ 140–41. However, "he is still open to careers other than those strictly in vocational ministry." *Id.* ¶ 45. Mr. Thomas intended to major in Music and Worship at Liberty University, which is classified as a CIP Code 39 program and thus ineligible for a VTAG award. *Id.* ¶¶ 143–45, 150–51. The State Council considers Liberty University's Music and Worship major a program for religious training or theological education. *Id.* ¶ 155. Mr. Thomas declared a different music major at Liberty University that *is* considered an eligible program for VTAG purposes, but he still intends to change his major to Music and Worship and would then "lose VTAG." Pls.' Not. Suppl. Decls. Attach. 2 ¶¶ 8–10.[2]

## B. Plaintiff Trace Stevens and the Virginia National Guard STAP

The Virginia National Guard STAP offers grants to Virginia National Guard members to cover tuition costs remaining after receipt of other educational benefits. Compl. ¶ 13. STAP grant amounts are dependent on the amount of funds appropriated by the Virginia General Assembly. Compl. ¶ 159; Va. Code Ann. § 23.1-610(A). The Virginia Department of Military Affairs ("the Department") administers STAP. Compl. ¶ 51. Defendant Major General James W. Ring is the Adjutant General of Virginia and, through that role, serves as the head of the Department;

---

[2] Given that Plaintiffs submitted their Notice of Supplemental Declarations to update the Court on recent factual developments while the instant motions have been pending, the Court treats the Notice as a document attached to the Complaint. Defendants have not objected to the filing of Plaintiffs' Notice. The Court utilizes the Notice in order to provide an accurate recitation of relevant facts. That said, no information contained in the Notice is ultimately dispositive for purposes of the Court's rulings on the Motion to Dismiss or Motion for Preliminary Injunction.

Defendant Donald L. Unmussig is the Department's Chief Financial Officer (together, "Department Defendants").  *Id.*  ¶¶ 47, 49.

Per the governing Virginia statute, any Virginia National Guard member is eligible for a STAP grant so long as he or she:  (i) has a minimum remaining service obligation of two years; (ii) has satisfactorily completed required initial active duty service; (iii) is satisfactorily performing his or her National Guard duty; and (iv) is enrolled in and in good standing at any public institution of higher education or accredited nonprofit private institution of higher education "whose primary purpose is to provide collegiate or graduate education and not to provide religious training or theological education . . . ."  Compl. ¶ 158; Va. Code Ann. § 23.1-610(A).

Unlike the statutory provisions governing the VTAG Program, the STAP statute does not contain further eligibility restrictions based on a student's chosen program at an appropriate institution.  Compl. ¶ 167, Va. Code Ann. § 23.1-610.  The Department has not adopted regulations or publicly available guidance explaining which degrees are for religious training or theological education.  Compl. ¶ 173.  Command Policy 22-023, used by the Department to administer STAP, states that "[i]n accordance with the Constitution of Virginia, Article I., Section 16, theological degrees are ineligible for [an] award (e.g., seminary school)."  *Id.* ¶ 164; Compl. Ex. 5 § 7(a).  On the Virginia National Guard State Tuition Assistance Program website, the Frequently Asked Questions webpage provides the following additional guidance:

> In accordance with the Constitution of Virginia, Article I., Section 16, Religious and/or Theological Degrees are ineligible for STA[P] award.  Religious requirement/ elective courses may be eligible if the overall degree major/ minor is not religious or theological in nature.

*Frequently Asked Questions*, Virginia National Guard State Tuition Assistance Program, https://statetuition.vangweb.com/faqs [https://perma.cc/92QP-FTQP]; *see also* Compl. ¶ 174.

6

The Department is statutorily authorized to "utilize grant funding in order to recruit qualified applicants for service in the Virginia National Guard." Compl. ¶ 163; Va. Code Ann. § 23.1-610(D). Per Command Policy 22-023, appeal requests following denial of an application for a STAP grant may be submitted up to 15 days from the date of denial and are "reviewed on a case-by-case basis by the State Education Office." Compl. Ex. 5 § 11(a). "Application denials based upon statutory language are not eligible for appeal." *Id.*

Plaintiff Trace Stevens, like Mr. Johnson and Mr. Thomas, is a Christian with sincere religious beliefs rooted in the Holy Bible as the Word of God. Compl. ¶¶ 182–83. During his senior year of high school, Mr. Stevens "believed that God wanted him to pursue a college education to help prepare him for a future career in some type of ministry work." *Id.* ¶ 189. A Virginia Army National Guard recruiter told Mr. Stevens that the National Guard and U.S. Army / Department of Defense could assist him with paying for college if he joined. *Id.* ¶¶ 192, 194. Mr. Stevens enlisted in the Virginia National Guard in May 2023, mainly to help him afford college. *Id.* ¶ 198. He originally sought a grant through the Virginia National Guard for an online ministerial leadership program at a Christian university in Florida. *Id.* ¶¶ 193, 199. The Department informed Mr. Stevens that this program "was ineligible because it was religious and was at an out-of-state college." *Id.* ¶ 200. Defendant Ring confirmed via email that Mr. Stevens's "desired theological degree program is ineligible to receive funds from [STAP]." *Id.* ¶ 202; Compl. Ex. 6.

After returning from basic training, Mr. Stevens applied to Liberty University, hopeful he would be able to use a National Guard grant there. Compl. ¶ 205. He was accepted and decided to pursue a "Bachelor of Science in Religion (General Track)" because he "believe[d] God called him to pursue it" and because it would prepare him for a career in ministry and/or the Army. *Id.* ¶¶ 206–07. Mr. Stevens's "primary plan is to become a chaplain in the military[,]" but he has

7

other career interests as well. *Id.* ¶¶ 208–09. In July 2024, Mr. Stevens emailed the Department to ask if he would be eligible for a grant while attending Liberty University online. *Id.* ¶ 216. The Department responded that online programs at Liberty University were eligible, but "reiterated that the National Guard Grant could not be used for 'religious degrees,'" although it "would possibly pay for a particular religious required course for another type of degree." *Id.* ¶ 217; Compl. Ex. 7. In light of this guidance, Mr. Stevens did not apply for a grant through the National Guard for the fall 2024 semester. Compl. ¶ 219.

Mr. Stevens did ultimately choose to major in Religion, and he applied for a STAP grant for the spring 2025 semester. *Id.* ¶¶ 220, 223; Compl. Ex. 8. Mr. Stevens had learned that his Religion major, as a CIP Code 38 program, *was* eligible for VTAG. Compl. ¶ 223. Noting this inconsistency, Mr. Stevens again asked the Department whether he was eligible for a grant through the National Guard. *Id.* ¶ 224; Compl. Ex. 9. Defendant Unmussig emailed Mr. Stevens, explaining that STAP and VTAG are different grant programs managed by different organizations and stating that the Department could not "violate the law" by awarding Mr. Stevens a grant using funds from STAP for his "degree in religion from Liberty University." Compl. ¶ 227; Compl. Ex. 9. Mr. Stevens's application for a STAP grant was ultimately denied. Compl. ¶ 15. He was, however, able to receive federal tuition assistance from the United States Army for his Religion (General Track) program at Liberty University. *Id.* ¶¶ 14, 17. Mr. Stevens now seeks a grant through the National Guard to pursue a Master of Divinity Degree at Liberty University. Pls.' Not. Suppl. Decls. Attach. 1 ¶¶ 13–17.

### III. ANALYSIS

Defendants seek dismissal of each of Plaintiffs' three claims, insisting that denial of State grant funding for Plaintiffs' pursuit of degrees in religious training or theological education is compatible with the Free Exercise, Establishment, and Equal Protection Clauses of the United

States Constitution.  Defendants argue that Plaintiffs' Complaint fails to state any claim upon which relief can be granted because United States Supreme Court precedent embodied in *Locke v. Davey* forecloses all three counts.  540 U.S. 712 (2004).  The Court agrees that, so long as *Locke* remains good law, Plaintiffs' claims against the State Council Defendants, as administrators of the VTAG Program, must fail.  The Court suspects that *Locke* also dooms Plaintiffs' claims against the administrators of STAP.  However, in light of the limited factual record before the Court— particularly with respect to the procedures utilized by the Department to administer the STAP program and execute its statutory mandate—the Court will deny the Motion to Dismiss with respect to Plaintiffs' asserted claims against the Department Defendants.  The Court will further deny the Motion for Preliminary Injunction, finding that Plaintiffs are unlikely to succeed on the merits of their claims against all Defendants.

**A. Plaintiffs' Claims Against State Council Defendants, VTAG Administrators**

Plaintiffs aver that their case is distinguishable from *Locke* because (1) Virginia's grant programs are not neutral or generally applicable; (2) Plaintiffs do not necessarily intend to prepare for a lifetime of ministry; and (3) the State's interest in not funding clergy is inapposite when Plaintiffs are not clergy and may never be.  Pls.' Br. Opp'n Mot. Dismiss 1–2, ECF No. 26. Although the Court appreciates that religious freedom jurisprudence has evolved significantly in recent years, the Supreme Court continues to engage with, and has declined to overrule, *Locke*. *See, e.g.*, *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 479–80 (2020); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 464–65 (2017); *Carson ex rel. O.C. v. Makin*, 596 U.S. 767, 788–89 (2022).  Despite Plaintiffs' arguments to the contrary, the Court reads *Locke* to remain good law that is on-point for at least the VTAG Program and thus binding authority compelling dismissal of all claims against the State Council Defendants.

A brief review of *Locke* is warranted.  The plaintiff in *Locke*, Joshua Davey, challenged a Washington State scholarship program that provided tuition assistance for college students pursuing non-theological degrees.  540 U.S. at 716.  The program's governing statute did not further define what constituted "a degree in theology," but the parties agreed that "the statute simply codifie[d] the State's constitutional prohibition on providing funds to students to pursue degrees that are 'devotional in nature and designed to induce religious faith.'"  *Id.*  Davey, who decided to pursue a double major in pastoral ministries and business management/administration, was unable to receive State scholarship funds because the pastoral ministries degree was considered "devotional" and therefore excluded under Washington's program.  *Id.* at 717.  Noting a "historic and substantial state interest" in "not funding the pursuit of devotional degrees" out of concern for avoiding an establishment of religion, the Supreme Court found "nothing" about the Washington State law or scholarship program "suggest[ing] animus toward religion."  *Id.* at 713.  Ultimately, the Court held in *Locke* that the State did not violate the Free Exercise Clause by "merely [having] chosen not to fund a distinct category of instruction" as part of "an otherwise inclusive aid program[.]"  *Id.* at 713, 715.  Washington's law did "d[id] not require students to choose between their religious beliefs and receiving a government benefit."  *Id.* at 720–21.  "If any room exists between the two Religion Clauses," said the Court, "it must be here."  *Id.* at 725.

Plaintiffs' attempts to distinguish their case against the State Council Defendants from *Locke* are unavailing.  For one, the fact that Mr. Johnson and Mr. Thomas are considering ministry work among "various other secular careers" does not differentiate them from Davey.  Pl.'s Br. Opp'n Mot. Dismiss 11.  Davey himself pursued a double major in pastoral ministries and business, and thus evidently had both secular and theological ambitions—much like Plaintiffs. *Locke*, 540 U.S. at 718.  Although Davey may have been more sure about becoming a church pastor than Mr. Johnson or Mr. Thomas, *Locke* does not premise its holding on the degree of

10

certainty individual students express when it comes to their future career path.  Indeed, a State's historical interest against funding the clergy logically remains constant, notwithstanding the evolving beliefs, ambitions, and intentions of students pursuing State funding for their secondary education.  *See Locke*, 540 U.S. at 722–23.

*Locke* and the instant case are simply too analogous for the Court to meaningfully distinguish Plaintiffs' claims challenging VTAG.  Mr. Johnson and Mr. Thomas, like Davey, opted to pursue majors in a religious vocation.  *See* Compl. ¶¶ 115–16 (Mr. Johnson "decided to major in Pastoral Leadership"), 144 (Mr. Thomas "intends to major in Music and Worship"); *Locke*, 540 U.S. at 712 ("Davey chose a double major in pastoral ministries and business management / administration.").  As a result of this choice, Mr. Thomas and Mr. Johnson, again like Davey, became ineligible for State tuition assistance.  *See* Compl. ¶¶ 125, 151; *Locke*, 540 U.S. at 717. Mr. Thomas, Mr. Johnson, and Davey all have argued that the denial of funding based on their decision to pursue a theology degree violates the Free Exercise and Establishment Clauses of the First Amendment, as well as the Equal Protection Clause of the Fourteenth Amendment.  *See generally* Compl.; *Locke*, 540 U.S. at 718.  And both the Washington scholarship program and VTAG allow tuition assistance for students attending religious *universities* or taking religious *courses,* so long as the State funding does not go toward religious training or devotional *majors. Locke,* 540 U.S. at 724–25, n.9; 8 Va. Admin. Code § 40-71-10 (allowing VTAG to be used for a "a declared double-major that includes an ineligible degree program" under certain conditions).

Although *Locke* drives the Court's analysis as to the VTAG Program, the Court is also persuaded by *Hall v. Fleming*, in which this Court granted a motion to dismiss a complaint alleging a Free Exercise Clause Violation against the same Defendant Fleming as named herein.  2025 WL 2021022 (E.D. Va. May 9, 2025).  In that case, Plaintiff Hall challenged Defendant Fleming's application of the VTAG Program after her choice to pursue a major in a religious vocation

rendered her ineligible for state tuition assistance. *Id.* at *1–2. This Court dismissed Hall's claim, finding that Defendant Fleming's "application of the VTAG Program does not violate the Free Exercise Clause by prohibiting the use of state funds for Plaintiff's religious vocational studies" because her situation stood "directly analogous to Davey's" in *Locke*, and "the Court stands bound to follow binding Supreme Court precedent that remains good law." *See id.* at *3–4. *Hall* also addressed relatively recent doctrinal developments in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017), and *Espinoza v. Montana Department of Revenue*, 591 U.S. 464 (2020), finding that, in both cases, the Supreme Court did not overrule or abrogate *Locke* but rather reinforced the constitutionality of prohibitions on the use of state funds for religious vocational education. *Hall*, 2025 WL 2021022, at *3–4. The Court sees no reason why *Hall*—both its reasoning and outcome—ought not to apply to Plaintiffs' claims against Defendant Fleming and his co-administrator and co-Defendant, today.

The Court observes that Plaintiffs' brief in opposition to Defendants' Motion to Dismiss looks to relatively new cases in the Supreme Court's religious freedom jurisprudence, suggesting that the legal landscape has sufficiently changed such that Plaintiffs' claims are now viable despite *Locke* (and despite *Hall*). *See* Pl.'s Br. Opp'n Mot. Dismiss 1 (referencing the "*Carson*-line and *Fulton*-line of cases"). However, Plaintiffs' attempts to apply new doctrine to familiar facts to prompt a different result is foreclosed by many of the same cases Plaintiffs cite. *Carson,* for example, addressed *Locke*, describing how its "reasoning expressly turned on what it identified as the 'historic and substantial state interest' against using 'taxpayer funds to support church leaders.'" 596 U.S. at 788. The same reasoning applies here, since VTAG isolates as ineligible only CIP Code 39 programs, which are those that "prepare individuals for the professional practice of religious vocations." Mem. Supp. Mot. Dismiss 5, ECF No. 20. VTAG does not limit tuition

12

assistance to "nonsectarian" schools like the Maine program in *Carson*, to which the Supreme Court applied strict scrutiny.  596 U.S. at 768, 788.

As for *Fulton,* the Court cannot agree that the VTAG Program's accommodation of situations wherein double-major students are unable to take more courses for their "eligible" major as compared to their "ineligible" major due to circumstances beyond their control plausibly constitutes the type of "formal mechanism for granting exceptions [that] renders a policy not generally applicable."  8 Va. Admin. Code § 40-71-10; *Fulton v. City of Philadelphia*, 593 U.S. 522, 537 (2021).  The "particular reasons" for a student's course selection are irrelevant to the administrative question of whether a school's offered course schedule for a certain semester enables a student to equally earn credit toward both of her majors or not.  *See Fulton*, 593 U.S. at 533.  And, if anything, this purportedly "discretionary" aspect of the VTAG Program *lessens* the restrictions to which students pursuing religious training as one of multiple majors are subject, such that they are more free to use State funding to pursue religious training because of it.  *Cf.* Pls.' Br. Opp'n Mot. Dismiss 12–13.

The Court need not analyze every religious freedom case raised by Plaintiffs to conclude that *Locke* is good law that renders the VTAG Program constitutional.  *See Malbon v. Penn. Millers Mut. Ins. Co*., 636 F.2d 936, 939 n.8 (4th Cir. 1980) (explaining that it is not "absolutely necessary" that a court specifically recite and discuss each argument advanced by the parties).  As recently as June of last year, the Supreme Court instructed that "the government is generally free to place incidental burdens on religious exercise so long as it does so pursuant to a neutral policy that is generally applicable."  *Mahmoud v. Taylor*, 606 U.S. 522, 564 (citing *Emp. Div., Dept. of Human Res. of Ore. v. Smith*, 494 U.S. 872, 878–79 (1990)).  The Supreme Court has also "repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits."  *Carson*, 596 U.S. at 778 (citing *Sherbert v. Verner*, 374 U.S.

13

398, 404 (1963); *Everson v. Bd. of Ed. of Ewing*, 330 U.S. 1, 16 (1947)). Here, as in *Locke,* "the State's disfavor of religion (if it can be called that)" is mild—the exclusion of funding for religious instruction predominantly focused on ministerial work "places a relatively minor burden" on VTAG grantees. 540 U.S. at 724. Additionally, the VTAG Program "does not require students to choose between their religious beliefs and receiving a government benefit . . . [t]he State has merely chosen not to fund a distinct category of instruction." *See id.* at 720–21. Unless and until *Locke* is overruled or abrogated by the United States Supreme Court, the VTAG Program passes constitutional muster. This Court is not free to adopt Plaintiff's novel approach absent new, mandatory authority.

Plaintiffs' combined claim against the State Council Defendants for "Violation of the Religion Clauses" strikes the Court as even less viable than Plaintiff's first count alleging a pure Free Exercise claim. *See* Compl. ¶¶ 329–42. The "Religion Clauses" comprise the Free Exercise Clause and the Establishment Clause of the First Amendment and declare that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." *Locke*, 540 U.S. at 718; *Fulton*, 593 U.S. at 565 n.27 (Alito, J., concurring) (explaining applicability of the First Amendment to the States via the Fourteenth Amendment despite reference to "Congress"). In *Locke*, where the plaintiff argued that the denial of his scholarship violated the Free Exercise *and* Establishment Clauses of the First Amendment, the majority "[could] think of few areas in which a State's antiestablishment interests come more into play." *Id.* at 718, 722. Since the Court finds the instant case against the State Council Defendants to be squarely within the scope of *Locke,* which contemplated the meaning and effect of both Religion Clauses in an analogous factual context, Plaintiffs' hybrid Free Exercise and Establishment Clause Claim is foreclosed by that precedent as well.

14

Plaintiffs' invocation of *Catholic Charites Bureau, Inc. v. Wisconsin Labor & Industry Review Commission*, where the State "imposed a denominational preference by differentiating between religions based on theological lines," is inapposite.  605 U.S. 238, 241 (2025).  An issue of the government "distinguish[ing] among religions based on theological differences," *id.* at 254, is simply not before the Court in this case as presently alleged against Defendants Fleming and Jumper.  Here, the State Council "maintain[s] 'neutrality between religion and religion'" by applying the same state funding rules to any program that provides religious training or theological education—regardless of the specific faith pursued.  *See id.* (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)); Va. Code Ann. § 23.1-631; 8 Va. Admin. Code § 40-71-10.

Plaintiffs' reliance on *Tandon v. Newsome*, 593 U.S. 61 (2021), and *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), is also misplaced.  In both of those cases, the Supreme Court emphasized that governmental discrimination against *all* religious beliefs runs afoul of the Religion Clauses.  *See Lukumi*, 508 U.S. at 532 ("[W]e have often stated the principle that the First Amendment forbids an official purpose to disapprove of a particular religion or of religion in general." (collecting Establishment Clause cases)); *Tandon*, 593 U.S. at 62 ("[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." (citation omitted, emphasis in original)).  Plaintiffs allege that when the State Council Defendants, as part of their administration of VTAG, decide that CIP Code 39 programs are "too religious" and thus ineligible compared to CIP Code 38 majors, they discriminate based on the pervasiveness or intensity of Plaintiffs' religious beliefs.  Pls.' Br. Opp'n Mot. Dismiss 2, 20–21.

But this is not a plausible theory in light of the facts alleged by Plaintiffs, even when viewed in their favor.  The CIP Code classifications and distinctions integrated into the VTAG eligibility

system are neither based on programs' religious or secular nature nor the religiosity of the student. Rather, it is clearly the pedagogical *purpose* of programs that renders CIP Code 38 programs—to teach students about religion—VTAG-eligible, while CIP Code 39 programs—to prepare students for "Lay Ministry"—are ineligible. *Compare* Compl. Ex. 2, *with* Compl Ex. 3. Virginia's choice to provide funding for the former but not the latter as part of an otherwise inclusive program is not "constitutionally suspect" under *Locke. See* 540 U.S. at 725. Plaintiffs' allegations of "forbidden governmental entanglement" fall flat when the State Council's incorporation of the CIP Code system essentially eliminates the opportunity for Defendants Fleming and Jumper to excessively scrutinize programs or VTAG applicants. *See* Compl. ¶¶ 329–342; Pls.' Br. Opp'n Mot. Dismiss 20–22. Again, a CIP Code 38 program is VTAG-eligible, while a CIP Code 39 program is not, leaving little to no room for the State Council Defendants to entangle themselves (let alone entangle themselves excessively) in the religious beliefs and faith-based motivations of VTAG awardees.

Having determined that *Locke* governs Plaintiffs' claims against the State Council Defendants as administrators of VTAG, the alleged Equal Protection Clause claim must fail as well. "Because we hold . . . that the [Washington scholarship program] is not a violation of the Free Exercise Clause," explained the Court in *Locke*, "we apply rational-basis scrutiny to [Davey's] equal protection claims." 540 U.S. at 720 n.3; *see also Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974). Here, VTAG's statutory eligibility restriction to "educational programs other than those providing religious training or theological education," easily passes such review as rationally related to Virginia's legitimate and substantial antiestablishment interests. *See* Va. Code Ann. § 23.1-631; *Locke*, 540 U.S. at 713, 720 n.3.

The dismissal of Plaintiffs' claims against the State Council Defendants necessitates further dismissal of Plaintiffs Johnson and Thomas as parties to this case. The "constitutional minimum

16

of standing" requires three elements: (1) a plaintiff must have suffered an "injury in fact"; (2) there must be a causal connection between the injury and the conduct complained of, meaning that the injury is fairly traceable to the challenged action of the defendants; and (3) it must be likely that the injury will be redressed by a favorable judicial decision. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). At the pleading stage, "general factual allegations of injury resulting from the [defendant's] conduct" suffice. *Id.* at 561. Because the Court will dismiss Plaintiffs' claims against Defendants Fleming and Jumper, there will be no causal connection between the injuries allegedly suffered by Plaintiffs Johnson and Thomas and the alleged conduct of the remaining Defendants. Mr. Johnson and Mr. Thomas, who do not allege having ever applied for a National Guard STAP grant, cannot properly proceed in a suit challenging only that program. In other words, any injury to Mr. Johnson or Mr. Thomas cannot fairly "be traced to the challenged action" of Virginia Department of Military Affairs officials. *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41 (1976). This causation problem is exacerbated by the fact that any final decision regarding the National Guard STAP and the Department Defendants' administration thereof will not redress Mr. Johnson's nor Mr. Thomas's alleged injuries from having been denied (or anticipating future denial) of VTAG awards. Finding Plaintiffs Johnson and Thomas unable to meet the tripartite standing requirement within the modified party parameters of the instant matter, the Court will dismiss them from the action.

**B. Plaintiffs' Claims Against Department Officials, National Guard STAP Administrators**

Plaintiffs allege the same three claims discussed above against the Department officials that administer STAP. The Court is not prepared today to dismiss alleged constitutional violations under the Religion Clauses and Equal Protection provision of the federal Constitution based on a factual record that is underdeveloped with respect to the Virginia National Guard STAP and its administration. As required at this early stage of litigation, the Court remains open to the

17

possibility that some fact—yet to be discovered—will sufficiently distinguish STAP (and the Department's administration thereof) from the Washington State scholarship program examined in *Locke*.

For example, in *Locke*, "[t]he [postsecondary] institution, rather than the State, determine[d] whether a student's major [was] devotional." 540 U.S. at 717. The facts presently before the Court describing STAP and its administration can be read to plausibly suggest that State officials and their staff—not schools—decide which programs are "for religious training or theological education" and thereby excluded from STAP grant eligibility.[3] *See* Compl. ¶¶ 166–77. If later proven by Plaintiffs, such a factual departure from *Locke* could theoretically distinguish STAP and the Department's administration of that program from the Washington scholarship program previously scrutinized by the Supreme Court and the VTAG program reviewed by this Court both herein and in *Hall*. *See generally* 2025 WL 2021022.

The Court is assured, even now, that Plaintiffs cannot plead around *Locke* when it comes to the State Council's administration of VTAG with respect to Mr. Johnson and Mr. Thomas. But, given the more limited factual depiction of STAP presently available, the Court is not properly positioned to dismiss Plaintiffs' claims against Defendants Ring and Unmussig absent additional information. Mindful of *Locke* as mandatory authority but unable to presently determine whether *Locke's* scope encompasses STAP as administered by the Department Defendants in this case, the Court will permit Counts I through III as alleged against Defendants Ring and Unmussig to proceed.[4]

---

[3] The same cannot be said of the VTAG Program, which, by incorporating the CIP-code classification system, adopts the *school's* descriptions of the nature of its own programs. *See* Compl. ¶¶ 72, 77; Mem. Supp. Mot. Dismiss 5; Defs.' Reply Supp. Mot. Dismiss 14, ECF No. 28 ("the *university* . . . assigns the [Bachelor of Science in Religion] major CIP Code 38.0201" (emphasis added)).

[4] Defendants raise a *Pullman* abstention point in a footnote of their Memorandum in Support of their Motion: "If Stevens were asserting that the [Department] incorrectly applied Virginia law, the Court would lack jurisdiction to adjudicate such a claim." *See* Mem. Supp. Mot. Dismiss 10 n.3 (cleaned up) (citing *Pennhurst State Sch. & Hosp. v.*

## IV. MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs have moved the Court for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. Pls.' Mot. Prelim. Inj. 1, ECF No. 22. "A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citation omitted). "A plaintiff seeking a preliminary injunction must demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Id.* (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). All four requirements must be satisfied. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

Here, Plaintiffs' Motion for Preliminary Injunction is moot, at least in part. Plaintiffs ask that the Court prohibit Defendants from denying Plaintiffs tuition assistance grants for the summer 2025, fall 2025, and spring 2026 semesters. Pls.' Mot. Prelim. Inj. 1. Of course, by no fault of Plaintiffs, the summer and fall semesters of 2025 have passed and the spring 2026 semester is well underway. Further, after the Court's ruling on the Motion to Dismiss, only Mr. Stevens will remain as a Plaintiff with an actionable claim and only Defendants Ring and Unmussig will remain defending parties in this case. So, all that remains of the Motion for Preliminary Injunction for the Court's consideration is the request to enjoin the Department Defendants from denying Mr. Stevens a National Guard STAP grant while he pursues a Master of Divinity Program at Liberty

---

*Halderman*, 465 U.S. 89, 106, 124–25 (1984)). The Court responds in kind. This is a suit challenging the constitutionality of the actions of state officials, which can be properly considered by a federal court pursuant to the Supreme Court's holding in *Ex parte Young* because it is not a civil action against the State itself. 209 U.S. 123 (1908). If Defendants intend to suggest that this Court should abstain under *Pullman* because Plaintiffs' case "involves an open question of state law that is potentially dispositive inasmuch as its resolution may moot the federal constitutional issue," then the Court invites Defendants to initiate further briefing on that specific issue. *See W. Va. Citizens Def. League, Inc. v. City of Martinsburg*, 483 F. App'x 838, 839–40 (4th Cir. 2012) (cleaned up).

19

University as well as the request for reimbursement to Mr. Stevens in the amount of $2,009.99, which "he otherwise would [have] receiv[ed] but for the National Guard's religious exclusion." *Id.* at 1–2; *see Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394 (1981) ("This, then, is simply another instance in which one issue in a case has become moot, but the case as a whole remains alive . . . ." (citation omitted)).

Plaintiffs' surviving preliminary injunction requests on behalf of Mr. Stevens will be denied. For the reasons described above, *see supra* Part III, Plaintiffs have not established that they are likely to succeed on the merits of a Free Exercise Clause, Establishment Clause, or Equal Protection Clause Claim against the Defendants. Specifically, Mr. Stevens has not "demonstrate[d] by 'a clear showing' that . . . [he] is likely to succeed on the merits at trial" because mandatory authority embodied by *Locke* stands directly in his way, notwithstanding the fact that his claims survive the 12(b)(6) stage. *See Real Truth,* 575 F.3d at 345. As previously explained, Plaintiffs are entitled to further development of the factual record with respect to the Department's administration of the Virginia National Guard STAP, both broadly and as applied to Mr. Stevens specifically. The current legal landscape governing these claims, however, renders them unlikely to succeed, and the first of the four *Winter* factors is therefore fatal to any effort by Plaintiffs to secure preliminary relief. *See Winter*, 555 U.S. at 20; *Real Truth*, 575 F.3d at 346 (failure of one *Winter* factor is fatal to obtaining preliminary injunctive relief).

## V. CONCLUSION

For the reasons detailed above, Defendant's Motion to Dismiss will be granted in part and denied in part. Plaintiffs' three counts as alleged against Defendants Fleming and Jumper will be dismissed. The same three counts as alleged against Defendants Ring and Unmussig by Mr. Stevens will survive. Plaintiffs Johnson and Thomas will be dismissed for lack of standing with regard to the surviving claims. Finally, finding all surviving claims unlikely to succeed on the

merits in light of the Supreme Court's holding in *Locke,* the Court will deny Plaintiffs' Request for Preliminary Injunction.

An appropriate Order shall issue.

/s/ _____

Roderick C. Young
United States District Judge

Date: <u>March 31, 2026</u>
Richmond, Virginia